UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

AMBIKA P.,[1]

    Plaintiff,

v.

MARTIN O'MALLEY,

    Defendant.

Case No. 22-cv-07466-RMI

**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 19

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability benefits under Title II of the Social Security Act. *See* Admin. Rec. at 1.[2] The Appeals Council of the Social Security Administration declined to review the ALJ's decision. *Id.* As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, appropriately reviewable by this court. *See* 42 U.S.C. § 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 6, 8) and both parties have moved for summary judgment (dkts. 15, 19). For the reasons stated below, Plaintiff's Motion for Summary Judgment is granted, and Defendant's Cross-Motion for Summary Judgment is denied.

**LEGAL STANDARDS**

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact,

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in nine attachments to Docket Entry #14. *See* (Dkts. 14-1 through 14-9).

if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**SUMMARY OF THE RELEVANT EVIDENCE**

In September of 2017, Plaintiff suffered a bi-lateral shoulder injury while working as a sales associate at Target. AR at 63-64, 82. Plaintiff and a co-worker attempted to lift a 160-pound table onto an overhead shelf and Plaintiff felt a sharp pain in both shoulders, most predominant in his left, which was later diagnosed as a rotator cuff injury. *See id.* at 377. By July of 2018 Plaintiff had stopped working. *Id.* He received various treatments for his pain including cortisone injections, prescription-strength anti-inflammatories, physical therapy, and chiropractic care. *See id.* at 82-83, 377. Ultimately, his physicians determined that surgery was the best option, and in October of 2019, Dr. Samir Sharma performed surgery on Plaintiff's left shoulder. *Id.* at 1108-09. Despite surgery, Plaintiff continued to experience pain and limited range of motion (*see e.g*, *id.* at 82-83, 395, 400-01, 564, 587) and in July of 2020 an MRI demonstrated that Plaintiff's supraspinatus tear had deteriorated to a full thickness tear (*see id.* at 564-66).

On October 19, 2020, Plaintiff underwent a second surgery on his left shoulder. *Id.* at 1483-84. In the months that followed, Plaintiff completed post-operative physical therapy and

2

took prescription-strength anti-inflammatory and pain medications. *Id.* at 23, 84-86, 874, 878-79, 1300, 1303, 1306. However, pain in both shoulders persisted, and, particularly with respect to his right shoulder, worsened. *See id.* at 86, 1293, 1297, 1300, 1303, 1306, 1649-50. On June 14, 2021, Plaintiff had surgery on his right shoulder. *Id.* at 1592-93.

Since surgery, Plaintiff has continued to report intermittent pain and to demonstrate limited range of motion in both shoulders. *See e.g.*, *id.* at 1561 (August 2021, Plaintiff's left shoulder is "improving slowly" with pain rated at 6/10, and his right shoulder pain is rated 8/10); 1775 (September 2021 shoulder pain is 8/10); 1761 (October 2021, Plaintiff reports shoulder is still painful); 1769-70 (November 2021, Hawkins test is positive, shoulder crossover test is positive); 1767 (December 2021, Plaintiff rates pain in right shoulder as 5/10, left shoulder as 4/10, decreased range of motion on abduction, Hawkins test is positive, shoulder crossover test is positive). Plaintiff consistently "resisted abduction" and exhibited "positive impingement signs" on flexion. *See e.g., id.* at 1763 (August 2021, Plaintiff resists abduction and exhibits positive impingement signs on forward flexion); 1761 (October 2021, same); 1782 (December 2021, same);1780 (January 2022, same).

In September of 2021, Dr. Massih reviewed Plaintiff's records and performed a physical examination. *Id.* at 1728-1760. He observed that Plaintiff had limited range of motion in both shoulders and opined that Plaintiff could lift up to twenty pounds but could do "no repetitive overhead work." *Id.* at 1728. Notably, during the examination Plaintiff could not raise his arms to shoulder height. *Id.* at 1755 (Plaintiff's abduction of both shoulders was 80 degrees and forward flexion was 60 degrees on his right shoulder and 80 degrees on his left). Dr. Massih was concerned about Plaintiff's persistent symptoms, noting that surgery on his left shoulder was "without benefit" and that an investigation into an alternative etiology for his symptoms—such as proximal root pathology at the cervical spine—would be wise, particularly given the more-recent development of numbness and lack of sensation. *Id.* 1758-59.

All of Plaintiff's treating physicians—Drs. Samir Sharma, Kavita Sharma, Anagnost, and Kaisler-Meza—have opined that he is unable to lift or carry more than ten pounds and is unable to work overhead due to pain. *Id.* at 27-29. The most recent of these opinions were provided in

February of 2022 by Dr. Kavita Sharma and Dr. Anagnost. *See id.* at 1778, 1786. Two state agency consultants—Drs. Ruo and Cepeda—reviewed Plaintiff's medical records. *See id.* at 141-57 *and* 159-77. Dr. Ruo's opinion was issued on May 4, 2021, roughly one month prior to Plaintiff's third shoulder surgery. *Id.* at 141. Dr. Ruo opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently and could reach overhead occasionally. *Id.* at 150-52. Dr. Cepeda affirmed Dr. Ruo's opinion in September of 2021. *Id.* at 170-72.

In March of 2022, Plaintiff testified at a hearing before the ALJ that, despite three shoulder surgeries, he was still in a significant amount of pain. *Id.* at 42. He is unable to sleep, has difficulty doing anything more than the lightest of household chores, is unable to lift more than a gallon of milk, and cannot raise his arms above shoulder height. *Id.* at 43-44. More recently, Plaintiff has begun to experience numbness and tingling in his arms and fingers. *Id.* As to his daily activities, Plaintiff confirmed that he was able to dress himself, take a bath, use the toilet, make a meal, write a note, type a message on the computer, use a telephone, work outdoors on flat ground, climb up a flight of stairs, sit or recline, rise from a chair, run errands, get in and out of a car, and sleep. He testified that in a typical day, he has breakfast, takes his dogs for a short walk, and then he spends the day resting. Plaintiff further testified that he could raise his arms no higher than shoulder height. *Id.* at 44.

## THE ALJ'S DECISION

The ALJ engaged in the required five step sequential evaluation process. *See id.* at 16-30. At step one, the ALJ determined Plaintiff had not performed substantial gainful activity during the relevant period. *Id.* at 19. At step two, the ALJ determined Plaintiff's severe impairments were left rotator cuff repair and sequalae and right shoulder impingement syndrome. *Id.* at 19-20. The ALJ found Plaintiff's diabetes mellitus, right corneal abrasion, and obesity to be non-severe. *Id.* At step three, the ALJ found that none of Plaintiff's conditions met or equaled any listed impairment. *Id.* In formulating Plaintiff's residual functional capacity ("RFC"), the ALJ determined that Plaintiff could perform light work, with several exertional limitations. Relevant to the instant appeal, the ALJ found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently with occasional reaching overhead to the left and right. *Id.* at 20. In reaching this determination, the

1  ALJ dismissed Plaintiff's testimony about the severity and persistence of his pain because it was
2  inconsistent with his "somewhat normal" daily activities. *Id.* at 25. At step four, the ALJ found
3  that Plaintiff could complete his past relevant work as a retail salesperson as generally, rather than
4  actually, performed. *Id.* at 29. The ALJ then concluded that Plaintiff was not disabled. *Id.* at 30.

### DISCCUSION

The court finds that the ALJ erred at step three, in formulating Plaintiff's RFC, by dismissing Plaintiff's pain testimony without offering "specific, clear, and convincing reasons" for doing so. This error is not harmless, as Plaintiff's testimony that he could not lift more than ten pounds and could not reach over his head, if included in his RFC, would preclude him from performing his previous work as a retail salesperson. *See* AR at 48 (VE testimony that a limitation to no overhead reaching and no lifting over ten pounds would preclude his prior employment).

When assessing a claimant's testimony regarding the subjective intensity, persistence, and limiting effects of their symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged." *Id.* (internal quotations omitted). If the first test is met, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1015 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) and *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)) (internal quotations omitted). This is not an easy standard to meet; "[t]he clear and convincing standard is the most demanding required in Social Security Cases." *Id.* (citing *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

A claimant's daily activities may undermine allegations of pain. *See e.g.*, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Daily activities may be incompatible with the severity of a claimant's alleged symptoms or may indicate the claimant is capable of skills transferrable to the workplace. *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (superseded on other grounds by 20 C.F.R. § 404.1502(a))). However, "the Social Security Act does not require that

1  claimants be utterly incapacitated to be eligible for benefits." *Cooper v. Bowen*, 815 F.2d 557, 561
2  (9th Cir. 1989). Moreover, "many home activities are not easily transferable to … the more
3  grueling environment of the workplace[.]" *Id.; see also Garrison*, 759 F.3d at 1016 ("The critical
4  differences between activities of daily living and activities in a full-time job are that a person has
5  more flexibility in scheduling the former than the latter, can get help from other persons …, and is
6  not held to a minimum standard of performance, as [he] would be by an employer. The failure to
7  recognize these differences is a recurrent, and deplorable, feature of opinions by administrative
8  law judges in social security disability cases.") (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647
9  (7th Cir. 2012)). Thus, "[o]nly if the activity were inconsistent with claimant's claimed limitations
10 would those activities have any bearing on claimant's credibility." *Reddick*, 157 F.3d at 722.

11       Here, after finding that Plaintiff's medically determinable impairments could reasonably be
12 expected to cause Plaintiff's alleged symptoms, the ALJ determined that Plaintiff's daily activities
13 were inconsistent with his allegations of pain and its limiting effects. However, the ALJ did not
14 specify which portions of Plaintiff's testimony were inconsistent with his daily activities, an
15 omission that, itself, indicates a failure to comport with the Ninth Circuit's specificity
16 requirement. *Cf. Treichler v. Comm'r Soc. Sec. Admin*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("An
17 ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical
18 evidence, without any specific findings in support of that conclusion is insufficient for our
19 review") (internal citations and quotation marks omitted).  Indeed, the court can surmise that the
20 ALJ rejected Plaintiff's claims regarding his inability to lift more than ten pounds or reach
21 overhead only because these restrictions do not appear in Plaintiff's RFC. Further, the ALJ did not
22 explain why Plaintiff's daily activities undermine the alleged severity of his pain, or "make
23 specific findings relating to the daily activities and their transferability." *See Orn*, 495 F.3d at 639.
24 Regardless, Plaintiff's daily activities—sitting and reclining, typing, using a phone, doing light
25 housework, driving, bathing, going to the bathroom, getting in and out of the car, writing a note—
26 are not inconsistent with Plaintiff's allegations that he is unable to lift more than ten pounds or
27 reach his arms over his head. As such, Plaintiff's daily activities do not constitute a "specific, clear
28 and convincing reason" for dismissing his testimony. Because crediting Plaintiff's testimony as to

the limiting effects of his pain would necessarily alter his RFC and thus, could change the ALJ's ultimate finding of non-disability, the error is not harmless. Accordingly, the court **REMANDS** for further proceedings. On remand, the ALJ is **ORDERED** to reassess Plaintiff's pain and symptom testimony and, if necessary, to provide "specific, clear and convincing reasons" for dismissing Plaintiff's allegations.

Having found reversible error in the ALJ's assessment of Plaintiff's pain and symptom testimony, the court need not address Plaintiff's other claims. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). Accordingly, on remand, the ALJ is **ORDERED** to consider the issues raised in Plaintiff's briefing and to modify any ensuing opinion as necessary. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 WL 6626322, at *21 (D. Or. Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 WL 1056787, at *5 (N.D. Cal Mar. 19, 2021).

## CONCLUSION

For the reasons stated above, the court finds that the ALJ's decision was not supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Cross-Motion is **DENIED**. This case is remanded for further proceedings consistent with this order. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: March 26, 2024

ROBERT M. ILLMAN
United States Magistrate Judge

7